# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMANDA MORAN,<br>　　　　　Plaintiff,<br><br>　　　v.<br><br>WILLIAM BARR,<br>　　　　　Defendant.[1] | Civil Action No. 18-1986 (CKK) |

## MEMORANDUM OPINION
(July 27, 2020)

Pending before the Court is Plaintiff Amanda Moran's Motion for Leave to Amend Her First Amended Complaint, ECF No. 12. Plaintiff's suit is brought under Section 501 of the Rehabilitation Act, 29 U.S.C. § 791. Am. Compl., ECF No. 9, at ¶ 1. Plaintiff seeks leave to file a Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) that alleges further discriminatory and retaliatory actions. Pl.'s Mem. at 2. Defendant opposes her Motion because, he argues, her proposed amendments would alter the scope of the case and would be futile. Def.'s Opp'n at 1. Upon consideration of the pleadings,[2] relevant legal authorities, and the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), William Barr is substituted as Defendant for former Acting Attorney General Matthew Whitaker.

[2] The Court's consideration has focused on the following:

- Pl. Amanda Moran's Mot. for Leave to Am. Her First Am. Compl. ("Pl.'s Mot."), ECF No. 12;
- Pl.'s Mem. of P. & A. in Supp. of Her Mot. for Leave to File Her Second Am. Compl. ("Pl.'s Mem."), ECF No. 12-1;
- Def.'s Opp'n to Pl.'s Mot. for Leave to Am. Her First Am. Compl. ("Def.'s Opp'n"), ECF No. 14;
- Pl. Amanda Moran's Reply in Supp. of Her Mot. for Leave to File Her Second Am. Compl. ("Pl.'s Reply"), ECF No. 15; and
- Pl. Amanda Moran's Suppl. Br. in Supp. of Her Mot. for Leave to File Her Second Am. Compl. ("Pl.'s Suppl. Br."), ECF No. 16.

In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision. *See* LCvR 7(f).

1

record as a whole, the Court **DENIES** Plaintiff's Motion.

## I. BACKGROUND

At the time of her Complaint, Plaintiff Amanda Moran had worked for the Federal Bureau of Investigation ("FBI") for approximately sixteen years in various positions. Am. Compl. ¶ 8. She alleges that she suffered a severe back injury while on duty in 2005, which left her with permanent back damage. *Id.* ¶ 9. As a result of her disability, her physician had restricted her to a commuting time of less than thirty minutes. *Id.*

She alleges that shortly after arriving in the Behavioral Science Unit in 2013, she learned that unit was going to be merged into the Critical Incident Response Group. *Id.* ¶¶ 10, 12. The section chief of the Critical Incident Response Group, Leonard Johns, made Plaintiff feel that "her position was in jeopardy," so she began to seek lateral transfer opportunities. *Id.* ¶ 13. She also alleges that, in or about August 2015, she met with Deputy Assistant Director Frankland Gorham about her concerns regarding the section chief and that she was not being given the same transfer opportunities as other colleagues. *Id.* ¶ 14. Moreover, Plaintiff alleges that in or about December 2015, she learned that her immediate supervisor, Unit Chief Kristen Slater, had failed to forward her medical documentation to the health services and firearms units, which caused her later to appear "delinquent." *Id.* ¶ 15.

From August 2015 until January 2016, Plaintiff alleges that she was on medical leave due to a disability-related back injury that required surgery and a long recovery period. *Id.* ¶ 16. In or about February 2016, Johns informed her that Deputy Assistant Director Gorham had denied her request for a four-month extension to her term as a reasonable accommodation. *Id.* ¶ 17. The purpose of the requested extension was to allow her to seek transfer and other work opportunities within FBI which she could not pursue while had been on medical leave. *Id.* She alleges that this

refusal "effectively prevented her from preparing for the end of her term because of her disability." *Id.*

She alleges that thereafter, Johns and Slater had demoted her from Program Manager for the John Jay College of Criminal Justice Program, *id.* ¶ 18, and that she was instead given "menial and intern-level tasks" that constituted a downward shift in workplace responsibility, *id.* ¶ 19. When she met with Johns in 2016 to discuss her future in the Critical Incident Response Group, she was told that she was "crazy" if she thought she could stay in the Group. *Id.* ¶ 20. She further alleges that Gorham was unwilling to help her after this and after her medical leave, and that he denied her requests for a lateral transfer. *Id.* ¶ 22. This resulted in a lack of transfer opportunities, which Plaintiff alleges made it severely difficult for her to find a position that would allow her to commute for less than thirty minutes as her physician had mandated. *Id.* ¶ 23.

Plaintiff subsequently filed an Equal Employment Opportunity ("EEO") complaint in May 2016 for a hostile work environment, disability-based harassment, and reprisal for a prior EEO complaint (a 2012 complaint for sexual harassment). *Id.* ¶¶ 11, 24. She received the FBI's Report of Investigation on September 29, 2016 and subsequently requested a hearing before the Washington, D.C. Equal Employment Opportunity Commission ("EEOC") Field Office on October 25, 2016. *Id.* ¶ 25.

She further alleges that she subsequently was removed from a project on which she had dedicated six months of work, *id.* ¶ 26; that Slater denied her request to lead instructional training that she'd been asked to provide, *id.* ¶¶ 27–28; that she was transferred from her current unit to Counter Improvised Explosive Devices, which was a "complete change in her work responsibilities," *id.* ¶ 29; that during the meeting regarding her transfer, Critical Incident Response Group Deputy Assistant Director Edward Reinhold discussed her past EEO activity with

3

her, told her that she had filed her paperwork wrong, questioned how she was able to commute for less than thirty minutes while she had worked in Nebraska, and ignored her concern about how she could travel to work for Counter Improvised Explosive Devices in a way that accommodated her disability, *id.* ¶¶ 29–31; that she was given only one week to prepare for her assignment with Counter Improvised Explosive Devices despite having no training in experience in explosives, *id.* ¶ 32; and that she was denied a request that she be considered for a position in the Behavioral Analysis Unit without explanation, *id.* ¶¶ 33–34.  Then, in May 2017, Plaintiff filed a second EEO complaint for discrimination claiming a hostile work environment, denial of reasonable accommodations for her disability, and retaliation for engaging in protected activity.  *Id.* ¶ 35.

On August 24, 2018, Plaintiff subsequently brought the instant suit under Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, alleging that many of the preceding acts constituted adverse employment actions that were discriminatory and/or retaliatory.  Am. Compl. ¶¶ 1, 36–54.

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a party may amend its pleadings once as a matter of course within twenty-one days after service or within twenty-one days after service of a responsive pleading.  Fed. R. Civ. P. 15(a)(1).  Where, as here, a party seeks to amend its pleadings outside that time period, they may do so only with the opposing party's written consent or the district court's leave. Fed. R. Civ. P. 15(a)(2). The decision whether to grant leave to amend a complaint is within the discretion of the district court, but leave should be freely given unless there is a good reason to the contrary. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a complaint "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a);  *see Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996); *Willoughby v. Potomac Elec. Power*

*Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996).

"When evaluating whether to grant leave to amend, the Court must consider (1) undue delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5) whether the plaintiff has previously amended the complaint." *Howell v. Gray*, 843 F. Supp. 2d 49, 54 (D.D.C. 2012) (citing *Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996)). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

"[A] district court has discretion to deny a motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss." *In re Interbank Funding Corp. Sec. Litigation*, 629 F. 3d 213, 215 (D.C. Cir. 2010). As a result, a court's decision as to whether to grant or deny on futility grounds a motion to amend "is for practical purposes, identical to review of a 12(b)(6) dismissal based on the allegation in the amended complaint." *Id.* at 215–16. And "[w]here . . . the complaint, as amended, would radically alter the scope and nature of the case and bears no more than a tangential relationship to the original action, leave to amend should be denied." *Miss. Ass'n of Cooperatives v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C. 1991).

### III. DISCUSSION

Plaintiff now seeks leave to amend her First Amended Complaint to include two new sets of allegations. The first set of allegations relate to a performance evaluation that she received. She alleges that in November 2018, her immediate supervisor, Unit Chief Steve Diaczyszyn, gave

Plaintiff a Performance Appraisal Report grading of "3" after his request for an extension to evaluate her, as she was out on medical leave during the summer of 2018, was denied. Pl.'s Mem. at 2. A grading of "3" meant "Satisfactory." *Id.* This was Plaintiff's first time receiving such a rating. *Id.* She was told that she received this low rating due to the lack of an extension; he could not justify a higher rating because he had only been her supervisor for a short time, and, according to Plaintiff, he indicated that she would have received a higher rating if not for her medical leave. *Id.* at 3. Plaintiff explains that Performance Appraisal Ratings cannot be changed and will remain on her record, which may affect future promotions and employment decisions. *Id.*

Second, Plaintiff seeks to add allegations regarding a fitness for duty review. *Id.* Plaintiff alleges that on January 31, 2019, after she filed her Complaint in this case, she received a notice from the FBI that explained that after reviewing her medical records, they identified that she had a "long-term health condition that potentially limit[ed] [her] ability to safely perform all of the essential task of a Special Agent." *Id.* She further claims that the accompanying memorandum presented an inaccurate accounting of her work restrictions and reasonable accommodations, which were used to justify reviewing her fitness for duty. *Id.* She alleges that other than her surgery time, there has been no change in her ability to perform her job duties or to her medical conditions in the past thirteen years; in fact, all of her medical restrictions were lifted in October 2018 save for sitting for long periods, which was lifted in February 2019. *Id.* She alleges that as a result of this review, a Medical Review Board will convene to consider the status of her current reasonable accommodations and fitness for duty, which has serious implications for her employment. *Id.* at 4. Moreover, when she asked for the medical records to understand the reasoning underlying the decision, she was directed to file a Freedom of Information Act Request. *Id.* She alleges that this violates Policy 6.6, "Release of Medical Information," of the FBI's own

Fitness for Duty Program.  *Id.*  She has attached her proposed Second Amended Complaint as an exhibit to her Motion.  *See id.* Ex. 3 (Proposed Second Am. Compl. for Equitable and Monetary Relief and Demand for Jury Trial), ECF No. 12-3 (hereinafter "Proposed Second Am. Compl.").

Defendant opposes the addition of these new allegations on three bases: (1) they would radically alter the scope of the case, (2) they would be futile because she has not exhausted her administrative remedies, and (3) they would be futile because she has failed to plead a viable claim of discrimination or retaliation.  Def.'s Opp'n at 4.  The Court considers each of these arguments in turn.

## A. Scope of the Case

Defendant first argues that granting Plaintiff's Motion would radically alter the scope of the case.  Def.'s Opp'n at 4–5.  He suggests that Plaintiff's new claims relate to a different time period, supervisors, offices, and types of discrimination or retaliation.  *Id.* at 5.

However, while Plaintiff's proposed new allegations certainly involve new evidence, they would not radically alter the scope of the case in the way that Defendant suggests.  Though Plaintiff's new claims involve a new time period (November 2018 through January 2019), and involve Plaintiff's experiences working in a different office and unit, her allegations still relate to her overall employment with the FBI.  Moreover, the proposed new allegations directly relate to her old allegations.  The first set of allegations regarding her performance evaluation stems directly from her alleged medical leave, which is also intertwined with her previous allegations.  *See* Pl.'s Mem. at 2.  So too is her second set of allegations regarding her fitness for duty related to her medical leave.  *See id.*  Many of her allegations in fact involve the same higher-level supervisors or positions.  *See id.*; Pl.'s Reply at 2. Furthermore, Plaintiff claims that these new acts are the latest in a string of discriminatory based on her disability by her supervisors, *see, e.g.*, Proposed

Second Am. Compl. ¶¶ 61, 63, and further retaliation for protected activity, including filing her Complaint in this matter on August 24, 2018 and her First Amended Complaint on January 2, 2019, *id.* ¶¶ 68–69.  Her new allegations are thus directly tied to the old allegations, and allowing them would not drastically alter the scope of the case.

The cases cited by Defendant do not suggest otherwise.  In *De Sousa v. Dep't of State*, 840 F. Supp. 2d 92 (D.D.C. 2012), for instance, the court denied leave to file an amended complaint because plaintiff sought to add five new claims that would have "drastically alter[ed] the nature of [the] action into a wide-ranging First Amendment litigation concerning the use of classified information," when it had previously had a narrower focus, *id.* at 114.  Plaintiff here does not seek to add new claims with little connection to her old ones and *De Sousa* is thus distinguishable.

The same is true of the proposed amendments in *Pinson v. United States Dep't of Justice*, 246 F. Supp. 3d 211, 231 (D.D.C. 2017), in which the court found that those amendments "b[ore]—at most—a tangential relationship to [the plaintiff's] original claims" because they were "unconnected in time, the identity of the alleged perpetrator, the [Bureau of Prisons] facility involved, and the type of alleged retaliation," *id.* 231.  In this case, while there is some disconnect between the proposed amendments and existing claims, Plaintiff claims that all the allegations stem from the same set of events and are retaliation for engaging in protected activity relating to those events, and she does not seek to add new parties as defendants.  There is therefore no grand disconnect here comparable to that in *Pinson*.

Accordingly, Defendant's argument does not persuade the Court that Plaintiff's Motion to Amend should be denied on this basis.  *See Geter v. United States Gov't Publ'g Office*, 268 F. Supp. 3d 34, 44–45 (D.D.C. 2017) (rejecting argument that leave to amend should be denied

because new allegations would drastically alter scope of case because changes were not as "dramatic" as defendant suggested and plaintiff did not "seek to change the parties to the action or significantly expand the facts at issue").

## B. Futility—Failure to Exhaust Administrative Remedies

Defendant next argues that the proposed amendments would be futile because Plaintiff failed to exhaust her administrative remedies on the new claims. Def.'s Opp'n at 5–8. In her original briefing, Plaintiff admitted that she had yet to file an EEO complaint for her new claims, but was planning to do so, and further argued that she was not required to do so. Pl.'s Mem. at 5 n.1; *id.* at 5–6; Pl.'s Reply at 3–5. However, while her Motion to Amend was pending, Plaintiff filed a supplemental brief with an attached letter indicating two things: first, that she had submitted an EEO complaint that was received on May 7, 2019, and second, that the investigation of her complaint had been completed in early 2020.[3] Pl.'s Suppl. Br. Ex. A at 2. Plaintiff now argues that Defendant's arguments are "moot." *Id.* at 1.

The Rehabilitation Act "limits judicial review to employees 'aggrieved by the final disposition' of their administrative 'complaint,'" and therefore mandates administrative exhaustion. *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006) (quoting 29 U.S.C. § 794a(a)(1)). "Exhaustion of administrative remedies is a jurisdictional requirement for Rehabilitation Act claims." *Porter v. Sebelius*, 944 F. Supp. 2d 65, 68 (D.D.C. 2013); *see also Sataki v. Broadcasting Bd. of Governors*, 733 F. Supp. 2d 1, 13 n. 14 (D.D.C. 2010) ("[A]dministrative exhaustion under

---

[3] The text of the letter itself does not have a date. *See* Pl.'s Suppl. Br. Ex. A. However, the first page of the letter was stamped "January 17, 2020," and Plaintiff filed her supplemental brief on March 30, 2020. *See id.* Ex. A at 1. Plaintiff also explained in her Reply that she filed her EEO complaint "within two days of filing her motion," Pl.'s Reply at 4 n.1, which would have been by no later than March 15, 2019, *see* Pl.'s Mot.

the Rehabilitation Act, but not Title VII, is jurisdictional."); *Carty v. Dist. of Columbia*, 699 F. Supp. 2d 1, 2 n.2 ("[U]nder the Rehabilitation Act, exhaustion is a jurisdictional requirement that a plaintiff has the burden to plead and prove."); *Ragsdale v. Holder*, 668 F. Supp. 2d 7, 16–17 (D.D.C. 2009) ("The District of Columbia Circuit has interpreted the exhaustion requirement of section 501 of the Rehabilitation Act as presenting a strict jurisdictional barrier to the filing of judicial complaints that fail to comply with that provision." (citing *Spinelli*, 446 F.3d at 162)).

Under the broad authority conferred upon it by Congress, the EEOC "has established detailed procedures for the administrative resolution of discrimination complaints" raised by federal employees. *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). Specifically, if an individual believes that she has been unlawfully discriminated against, she must consult an EEOC counselor within forty-five days of the alleged discriminatory action to attempt an informal resolution of the matter. 29 C.F.R. § 1614.105(a)(1). The limitations period begins to run when the employee "knew, or should have known, about the alleged discriminatory action." *Stewart v. Ashcroft*, 352 F.3d 422, 425 (D.C. Cir. 2003). "'Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice[,]' and a party must exhaust her administrative remedies for each discrete act of discrimination alleged or lose the ability to recover for it." *Doak v. Johnson*, 19 F. Supp. 3d 259, 268 (D.D.C. 2014) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002)), *aff'd*, 798 F.3d 1096 (D.C. Cir. 2015). If the matter is not resolved informally after the counseling period, the employee must file with the EEOC a formal written administrative complaint against the agency. 29 C.F.R. § 1614.106. The agency is then obligated to conduct "an impartial and appropriate investigation of the complaint within 180 days of the filing of the complaint unless the parties agree in writing to extend the time period." *Id.* § 1614.106(e)(2). After filing a formal

written complaint, the employee may file a civil action once the agency issues an adverse final decision or if 180 days has elapsed without a decision. *Id.* § 1614.407(b).

Here, as of the date of this Memorandum Opinion, Plaintiff claims that she filed an EEO complaint regarding the allegations in her proposed amendments and that the agency has completed its investigation of her complaint. *See* Pl.'s Suppl. Br.; *id.* Ex. A. However, because this was filed as a supplemental brief, Defendant has not had an opportunity to address these claims. Moreover, Defendant's initial arguments focused on the fact that Plaintiff had not yet filed an EEO complaint at the time that she filed her Motion to Amend, although Defendant did argue that Plaintiff's retaliation claim amendments premised on her performance evaluation would be futile because she did not allege that she filed her EEO complaint within forty-five days of the alleged acts—an argument that is considered below. Def.'s Opp'n at 13–14. However, because the Court denies Plaintiff's Motion to Amend on grounds explored in more detail below, the Court need not reach the issue of whether she properly administratively exhausted her remedies as to *all* her claims. This Memorandum Opinion only considers this issue specifically with respect to her retaliation claim premised upon her performance evaluation. *See infra* Section III.C.2.i.

## C. Futility—Failure to State a Claim

Defendant next argues that Plaintiff's Motion should be denied because her proposed amendments fail to allege a viable claim of discrimination or retaliation under the Rehabilitation Act. First, the Court finds that Plaintiff's proposed amendments to Count I regarding the fitness for duty letter and review do not allege an adverse action. It therefore agrees that those amendments, specifically with respect to Count I, are futile. Second, the Court finds that Plaintiff's proposed amendments to Count II are also futile. For her retaliation claim premised on her performance evaluation, she did not timely file her informal EEO complaint; and for her retaliation

claim based on her fitness for duty, she has not alleged an adverse action.

The Federal Rules require that a complaint include "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* Instead, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 556, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The Court first considers whether Plaintiff's proposed Second Amended Complaint sufficiently pleads a discrimination claim before turning to whether it sufficiently pleads a retaliation claim.

### 1. Discrimination (Disparate Treatment) Claim

The Rehabilitation Act of 1973 allows qualified disabled federal employees to sue their employers when they have been subjected to discrimination. *See* 29 U.S.C. § 794(a). The standards for determining an employment-related violation of the Rehabilitation Act are the same

standards used for a similar violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. 12111 *et seq.*; 29 U.S.C. § 794(d).  The Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") applies the *McDonnell Douglas* burden-shifting test to ADA discrimination cases where the plaintiff "offers no direct evidence tending to show discriminatory animus and the defendant denies that its decisions were motivated by the plaintiff's disability." *Marshall v. Federal Express Corp.*, 130 F.3d 1095, 1099 (D.C. Cir. 1997); *see Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 885–86 (D.C. Cir. 1997); *Barth v. Gelb*, 2 F.3d 1180, 1186 (D.C. Cir. 1993).

To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must show that she (1) is a disabled person within the meaning of the Act, (2) is qualified to perform the essential functions of the job without reasonable accommodation, and (3) suffered an adverse employment decision because of her disability.  *See Dorchy v. Wash. Metro. Area Transit Auth.*, 45 F. Supp. 2d 5, 10 (D.D.C.1999).  Although a plaintiff need not plead facts that establish a prima facie case at the motion to dismiss stage, the court may "explore the plaintiff's prima facie case at the dismissal stage to determine whether the plaintiff can ever meet h[er] initial burden to establish a prima facie case."  *Chien v. Sullivan*, 313 F. Supp. 3d 1, 9 (D.D.C. 2018) (internal quotation marks omitted).

Defendant argues that, even taken as true, Plaintiff's proposed amendments fail to meet the latter two elements of adverse action or causation.  Def.'s Opp'n at 10–13.  Because the Court finds that Plaintiff's proposed amendments do not allege an adverse action, it does not reach Defendant's arguments with respect to causation.

To establish an adverse employment action in the absence of a diminution in pay or benefits, which Plaintiff does not allege in her proposed amendments, she must show an action with "materially adverse consequences affecting the terms, conditions, or privileges of

employment." *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999). The employment decision must inflict "objectively tangible harm." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001) (recognizing that this requirement "guards against both judicial micromanagement of business practices, and frivolous suits over insignificant slights" (citation and internal quotation marks omitted)). "An employment decision does not rise to the level of an actionable adverse action . . . unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (internal quotation marks omitted); *see also Russell*, 257 F.3d at 818 ("[N]ot everything that makes an employee unhappy is an actionable adverse action. Minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would otherwise form the basis of a discrimination suit." (internal quotation marks omitted)). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). However, as the D.C. Circuit has explained,

> [T]he burden of establishing a prima facie case is not onerous. Its function is limited to eliminating the two most common nondiscriminatory reasons for a plaintiff's rejection: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought. Elimination of these reasons for refusal to hire . . . is sufficient, absent other explanation, to create an inference that the decision was a discriminatory one.

*Cones v. Shalala*, 199 F.3d 512, 516 (D.C. Cir. 2000) (citations and internal quotation marks omitted).

Defendant argues that the adverse actions alleged in Plaintiff's amendments do not satisfy this standard. Defendant's arguments focus on Plaintiff's new allegations regarding the letter she

received about her fitness for duty.[4]  Def.'s Opp'n at 11–12.  In response, Plaintiff argues that her allegations are sufficient and should be read together.  In particular, she argues that based on the facts alleged, the "fitness for duty process will not be fair" and that the process poses a threat in the form of "removal from her federal career."  Pl.'s Reply at 5.  While her proposed amendments should certainly be read alongside her other allegations in her proposed Second Amended Complaint, ECF No. 12-3, she does in fact allege that the series of events related to her fitness for duty review are, by themselves, an adverse action.  For example, her proposed Second Amended Complaint claims that:

> Defendant subjected Plaintiff to adverse actions when . . . (g) Defendant, through Bruce Cohen and Brooke Johnson, intentionally mischaracterized Moran's medical restrictions, subjected her to a fitness for duty review, and prevented her from doing anything to solve their factual inaccuracies, therefore endangering her position and career.

Proposed Second Am. Compl. ¶ 61(g); *see also id.* ¶ 62 (alleging that this action "represent[s] a significant and objective change to employment status" and to "Plaintiff's work responsibilities").  She further alleges that these acts are discriminatory because they "conflict with readily accessible information regarding Moran's disability related accommodations and restrictions and threaten to harm her by using her disability against her."  *Id.* ¶ 63(d).

But as Plaintiff seemingly moved to amend before the Medical Review Board convened to consider the status of her medical restrictions, reasonable accommodations, and fitness for duty, she does not allege that she has actually lost her position, any benefits, a promotion (or the opportunity or her chances for one); that she was reassigned; or that her work duties have

---

[4] This is because Plaintiff's proposed Second Amended Complaint does not include her allegations regarding her evaluation as part of her discrimination claim in Count I.  *See* Proposed Second Am. Compl., ECF No. 12-3, ¶¶ 56–64.  She does include those allegations in her Count II retaliation claim.  *See id.* ¶¶ 65–75.

significantly changed following receipt of the letter.  At this point, the allegations relating to the fitness for duty review do not provide an "objectively tangible harm."  *Russell*, 257 F.3d at 818. Without any allegation that any of these occurred, or that her duties were changed as a result of the letter and review, the Court cannot find that Plaintiff has alleged consequences relating to the "terms, conditions, or privileges of employment."  *Brown*, 199 F.3d at 457.  Plaintiff does not direct this Court to any authority that would suggest otherwise.

Accordingly, the Court agrees with Defendant that the proposed amendments relating to this series of actions would be futile.  *See Hunter v. Dist. of Columbia*, 905 F. Supp. 2d 364, 374 (D.D.C. 2012) (finding that being subjected to fitness for duty examination that did not result in "any change in [plaintiff's] employment status or benefits" was not adverse action), *aff'd sub nom. Hunter v. Dist. of Columbia Gov't*, No. 13-7003, 2013 WL 5610262 (D.C. Cir. Sept. 27, 2013); *Franklin v. Potter*, 600 F. Supp. 2d 38, 67 (D.D.C. 2009) ("The Court rejects plaintiff's premise that FFD exams, or requests to report for them, can be inherently adverse, and notes that USPS regulations encourage supervisors to require fitness-for-duty exams in appropriate circumstances."); *Cortazzo v. City of Reading*, No. 5:14-CV-2513, 2016 WL 1022267, at *4 (E.D. Pa. Mar. 15, 2016) ("An involuntary fitness-for-duty exam, in itself, is not a materially adverse action."); *Burgos-Stefanelli v. Napolitano*, No. 09-60118-CIV-HURLEY, 2010 WL 785802, at *9 (S.D. Fla. Mar. 5, 2010) (finding that "order directing [plaintiff] to submit to physical fitness for duty exam" did "not meet the definition of materially 'adverse actions' as a matter of law"), *aff'd sub nom. Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec.*, 410 F. App'x 243 (11th Cir. 2011).  The Court therefore denies Plaintiff's Motion to Amend as to these allegations in relation to Count I in particular.

### 2. *Retaliation Claim*

Because the test for retaliation under the ADA and the Rehabilitation Act was originally developed in the context of employment discrimination, the standards articulated in employment discrimination cases apply. *See Alston v. Dist. of Columbia*, 561 F. Supp. 2d 29, 40 (D.D.C. 2008); *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985). To establish a claim of retaliation under the Rehabilitation Act, the plaintiff must show that she (1) engaged in a protected activity, (2) was subjected to an adverse employment action, and (3) there was a causal link between the protected activity and the adverse action. *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007). Retaliation claims do not protect an individual "from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Plaintiff's Proposed Second Amended Complaint seeks to amend her Count II retaliation claim to include her new allegations regarding both her performance evaluation and the fitness for duty letter. Defendant challenges both sets of Plaintiff's proposed amendments with respect to this claim.

### i. Performance Evaluation

Defendant first argues that Plaintiff's retaliation claim premised on the proposed amendments relating to her performance evaluation lacks merit for three reasons: (1) Plaintiff did not timely file an EEO complaint, (2) Plaintiff does not sufficiently allege an adverse action, and (3) Plaintiff cannot connect the alleged protected activity and the alleged adverse action. Def.'s Opp'n at 13–15. The Court agrees with Defendant that Plaintiff has not shown that she timely filed an EEO complaint for this set of allegations. The Court therefore does not reach Defendant's arguments regarding adverse action and causation.

To begin with, in response to Defendant's argument on timeliness, Plaintiff argues that this

Court should consider non-precedential EEOC guidance allowing amendments to existing complaints without counseling (that is, without the forty-five-day requirement) if the claims are "like or related to" the claims raised in the original complaint.  Pl.'s Reply at 6; *see* Pl.'s Mem. at 5–7 (outlining argument in more depth).  Notably, Plaintiff does not claim that she in fact amended her prior EEO complaint—she instead urges the Court to adopt this standard in the context of a Motion to Amend a complaint even when no EEO complaint was filed.  Adopting the view advocated by Plaintiff, however, would place this Court in tension with relevant precedent.

Courts in this district disagree on whether plaintiffs must exhaust their administrative remedies with respect to new allegations of discrimination and retaliation that occur after the plaintiff has filed an administrative complaint in light of the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  *See Hicklin v. McDonald*, 110 F. Supp. 3d 16, 19–20 (D.D.C. 2015) (stating same and collecting cases).  "Prior to *Morgan*, an administrative complaint was construed to encompass all incidents that are 'like or reasonably related to the allegations contained in the charge,' regardless of whether the specific incidents of discrimination had been specifically brought to the investigating agency's attention."  *Mount v. Johnson*, 36 F. Supp. 3d 74, 83 (D.D.C. 2014) (quoting *Smith–Thompson v. Dist. of Columbia*, 657 F. Supp. 2d 123, 136 (D.D.C. 2009)).

Then, in *Morgan*, the Supreme Court considered the 180-day and 300-day filing periods under 42 U.S.C. § 2000e-5(e)(1).  536 U.S. at 109.  The Supreme Court ultimately rejected the application of that doctrine, known as the "continuing violation" doctrine, to certain discrete acts. *Id.* at 114.  In doing so, it explained that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" requiring administrative exhaustion.  *Id.*  It further explained that "discrete discriminatory acts are

18

not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113.

Following *Morgan*, courts in this district have disagreed on whether exhaustion is required for subsequent discriminatory and retaliatory acts. A minority of courts have found that separate exhaustion for subsequent discriminatory or retaliatory acts is not required if they are "'of a like kind to the retaliatory acts alleged in the EEOC charge' such that they necessarily would have come within the 'scope of any investigation that reasonably could have been expected to result from [the] initial charge of discrimination.'" *Mount*, 36 F. Supp. 3d at 85 (quoting *Hazel v. Wash. Metro. Area Transit Auth.*, No. 02–1375, 2006 WL 3623693, at *5, 8 (D.D.C. Dec. 4, 2006)); *see also id.* (collecting minority view cases); *Hicklin*, 110 F. Supp. 3d at 19 (same).

Most courts in this district, however, have relied upon *Morgan* in determining that exhaustion is required for all discrete acts of discrimination or retaliation, "'regardless of any relationship that may exist between those discrete claims and any others.'" *Rashad v. Washington Metro. Area Transit Auth.*, 945 F. Supp. 2d 152, 166 (D.D.C. 2013) (quoting *Coleman–Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 137–38 (D.D.C. 2004)); *see also Mount*, 36 F. Supp. 3d at 84–86 (explaining at length majority and minority positions). These courts, including this Court, have emphasized that "'[r]equiring a plaintiff to exhaust each discrete claim of discrimination or retaliation comports with the purpose of the exhaustion doctrine to give the agency notice of a claim and [the] opportunity to handle it internally and ensures that only claims plaintiff has diligently pursued will survive.'" *Hunter v. Dist. of Columbia*, 797 F. Supp. 2d 86, 95 (D.D.C. 2011) (quoting *Romero–Ostolaza v. Ridge*, 370 F. Supp. 2d 139, 149 (D.D.C. 2005)), *aff'd sub nom. Hunter v. Dist. of Columbia Gov't*, No. 13-7003, 2013 WL 5610262 (D.C. Cir. Sept. 27, 2013); *see also Camp v. Dist. of Columbia*, No. CIV.A. 04-234 (CKK), 2006 WL 667956, at *7–

8 (D.D.C. Mar. 14, 2006) (adopting same view of *Morgan*).   Although the D.C. Circuit has repeatedly refused to weigh in on this divide, *see, e.g.*, *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (explaining that it "need not decide whether *Morgan* did in fact overtake that [earlier] line of cases"), the Court is still persuaded that this is the better reading of *Morgan* considering the Supreme Court's emphasis on strict adherence to exhaustion requirements.   It therefore rejects Plaintiff's invitation to apply non-precedential EEOC precedent in contravention of *Morgan*.

Here, in her original briefing, Plaintiff admitted that she had not, as of the filing of her Motion to Amend, filed an EEO Complaint.   *See* Pl.'s Mem. at 5 & n.1.   However, she indicated in her Reply that she filed an "informal EEO complaint within two days of filing her motion;" if that is correct, she filed her EEO complaint for these allegations on or before March 15, 2019.[5] Pl.'s Reply at 4 n.1.   The letter attached to her supplemental briefing also suggests that she did file an informal EEO complaint.   Pl.'s Suppl. Br. Ex. A.   Nowhere, though, does Plaintiff indicate that she amended her prior EEO complaint to add her new allegations, which, according to Plaintiff, under EEOC rules would absolve her of complying with the forty-five-day counselor requirement. Instead, Plaintiff claims that she filed a new informal EEO complaint.   Even assuming that Plaintiff filed her informal EEO complaint on March 15, 2019, that would only render her complaint timely as to conduct occurring on or after January 29, 2019, forty-five days earlier.   Plaintiff's proposed amendments to her retaliation claim regarding her performance evaluation, however, stem from conduct that occurred in or around September 2018 through November 2018.   *See* Pl.'s Proposed Second Am. Compl. ¶¶ 40–44, 69(h).   Her filing of the EEO complaint was thus untimely as to

---

[5] The letter attached to Plaintiff's supplemental briefing seems to indicate that the EEO complaint was received in EEO subsequently on May 7, 2019.   Pl.'s Suppl. Br. Ex. A at 1.

these allegations.[6]

Moreover, even if this Court did adhere to the less restrictive minority view, Plaintiff's proposed amendments would not satisfy that standard because they would not necessarily "have come within the scope of any investigation that reasonably could have been expected to result from [the] initial charge of discrimination" because they occurred subsequent to the prior EEO complaints and investigations. *Mount*, 36 F. Supp. 3d at 85 (internal quotation marks omitted). Accordingly, she has not exhausted her administrative remedies with respect to this particular retaliation claim. Because it would be futile for her to amend her Complaint to add these allegations, the Court denies her Motion to Amend with respect to her proposed amendments to Count II premised upon her performance evaluation.

### ii. Fitness for Duty Letter and Review

Defendant next argues that Plaintiff's retaliation claim based on her fitness for duty review lacks merit because (1) she has not sufficiently alleged an adverse action and (2) she cannot show a causal link or nexus between the alleged protected activity and the alleged adverse action. Def.'s Opp'n at 15–16. For the same reasons as discussed above with respect to her discrimination claim, the Court agrees with Defendant that her allegations regarding the fitness for duty letter and review do not sufficiently allege an adverse action. *See supra* Section III.C.1. Accordingly, it would be futile for Plaintiff to amend her Complaint to include these allegations for her retaliation claim. The Court also therefore denies her Motion to Amend as to these proposed amendments to Count II.

---

[6] In other contexts, Plaintiff may have been able to argue that the agency waived exhaustion as a defense by accepting her EEO complaint. "However, where the relevant exhaustion inquiry is jurisdictional, as it is under the Rehabilitation Act, courts do not entertain equitable defenses such as waiver." *Doak*, 19 F. Supp. 3d at 269.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Leave to Amend Her First Amended Complaint, ECF No. 12.   In particular, the Court **DENIES WITHOUT PREJUDICE** her Motion to Amend insofar as it relates to her allegations regarding the fitness for duty letter and review and **DENIES** the Motion insofar as she failed to exhaust her administrative remedies for her claim premised upon her performance evaluation.   An appropriate Order accompanies this Memorandum Opinion.

Dated: July 27, 2020

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge